UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

WILLIAM VOYLES                              CASE NO.  6:18-CV-01410

VERSUS                                      JUDGE ROBERT R. SUMMERHAYS

SUPERIOR STAFFING, LLC, ET AL.              MAGISTRATE JUDGE DAVID J. AYO

<u>RULING</u>

Before the Court is a Motion for Default Judgment [ECF No. 102]. Defendants have filed

an opposition, and Plaintiffs have filed a reply.[1] Also before the Court are the parties' briefs

addressing damages.[2] After considering the motion, the record, and the applicable law, the Court

finds Plaintiffs' Motion for Default Judgment should be granted as to liability.

## I.
### BACKGROUND

On October 30, 2018, William Voyles brought this putative collective action lawsuit

against Defendants, Superior Staffing, LLC, Superior Disaster Relief, LLC, and Scott Butaud for

unpaid wages owed to Defendants' former employees. Butaud is the principal owner and operator

of both Superior Staffing and Superior Disaster, and he is alleged to operate those entities "as an

integrated enterprise under his control."[3] Defendants provide "Global Emergency Response"

services, and they employed dozens of disaster relief workers in a variety of locations, including

Puerto Rico and the U.S. Virgin Islands.[4] Voyles and the employees who have filed written consent

to join this suit were employed by Defendants as disaster relief workers.[5] By this suit, Plaintiffs

---

[1] ECF No. 104; ECF No. 105.
[2] ECF Nos. 88–89, 92–93.
[3] ECF No. 1 at 3.
[4] *Id.*
[5] *Id.* at 2; *see also* ECF Nos. 8, 10, 17–19.

seek to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and unpaid compensation pursuant to their employment contracts.[6] The Complaint alleges Defendants failed to pay their disaster relief workers any overtime wages earned during their employment, and it alleges Defendants failed to pay certain workers entirely at times.[7] Plaintiffs seek unpaid overtime compensation, liquidated damages, attorneys' fees, costs and expenses under the FLSA, and all unpaid compensation owed under their employment contracts.[8]

On December 1, 2018, Defendants were served with summons and the Complaint.[9] Defendants were required to file an answer on or before December 24, 2018.[10] Defendants made no appearance by that date. By January 31, 2019, Josh Cartledge, Jonathan Reprogle, Mike Williams, Jackson Wright, Michael McGee, Billy Whitley, and Michael Kucik filed statements into the record indicating they wished to opt into this suit.[11] On August 19, 2019, pursuant to Plaintiffs' request, the Clerk of Court entered default against Defendants.[12]

On September 27, 2019, Defendants made their first appearance by filing a motion to set aside entry of default.[13] In their supporting memorandum, Defendants explained that shortly before this suit was filed, Butaud was contacted by the Puerto Rico Department of Labor ("DOL") about a complaint it had received from Voyles, wherein Voyles claimed Defendants had failed to pay him and other employees wages and overtime compensation owed.[14] According to Defendants'

---

[6] ECF No. 1 at 8. The Complaint additionally asserts claims for unpaid minimum wages under the FLSA, and unpaid minimum wages and overtime compensation under the Puerto Rico Labor Transformation and Flexibility Act. Plaintiffs appear to have abandoned these claims. *See* ECF No. 89.

[7] *Id.* at 5–7.

[8] *Id.* at 8.

[9] ECF Nos. 4–6.

[10] Fed. R. Civ. P. 12.

[11] ECF Nos. 8, 10, 17, and 19. A statement of consent was also filed on behalf of Felix Rebollar. ECF No. 18. However, his claims appear to have been forfeited due to counsels' failure to pursue them. *See generally* ECF No. 89.

[12] ECF No. 21.

[13] ECF No. 24.

[14] ECF No. 24-1 at 3.

memorandum, Butaud believed the summons and complaint served on him in this suit pertained to the DOL investigation. Because Butaud had sent the DOL documents pertaining to payments made to certain employees on January 30, 2019, and thereafter heard nothing further from the DOL, "Butaud reasonably believed the matter was resolved."[15] Counsel further explained that during the week of September 23, 2019, "in preparation to defend Mr. Butaud and Superior Disaster Relief in an unrelated matter, Defendants' counsel discovered this suit."[16] When counsel brought this matter to Butaud's attention, he purportedly "had no knowledge of the suit or default."[17] Counsel then prepared the Motion to Set Aside Entry of Default.[18] Based on the forgoing recitation of events, Defendants argued their failure to respond to this suit was not willful.

In opposition to Defendants' Motion to Set Aside Entry of Default, Richard Burch, counsel for Plaintiffs, submitted his affidavit, attesting that he received a telephone call from Butaud on December 10, 2018, in which Butaud asked how they might resolve the lawsuit.[19] Counsel told Butaud that he represented several of Defendants' employees and that he needed payroll data in order to determine what his clients were owed. Butaud stated he would provide that information to Plaintiffs' counsel. On March 12, 2019, Plaintiffs' counsel informed Butaud that if he was not "in a position to send over our clients' documents, please go ahead and answer the suit."[20] After receiving no response from Butaud, Plaintiffs' counsel emailed Butaud again on June 21, 2019, stating, "Still haven't heard anything. We are moving forward with the lawsuit. You should get a lawyer to answer on your behalf."[21]

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* 4.
[19] ECF No. 28 at 2; ECF No. 28-1 at 1.
[20] ECF No. 28-1 at 2.
[21] *Id.* at 3.

The Motion to Set Aside Entry of Default was referred to the Magistrate Judge, who set an evidentiary hearing on November 14, 2019.[22] Approximately one week before the hearing, Defense counsel filed a motion to withdraw due to Defendants' failure "to fulfill certain financial obligations, including the funding of a retainer and the payment of outstanding bills incurred by Defendants in other matters."[23] The motion was initially denied.[24] At the evidentiary hearing, Butaud testified under oath. Butaud first testified that when the entry of default was brought to his attention by his counsel, he did recall having conversations and exchanging emails with Plaintiffs' counsel, but he was unaware of the repercussions of failing to respond (despite receiving the summons, which advised him of those repercussions).[25] He testified that he failed to respond to the suit because it "slipped [his] mind" due to the DOL investigation, and because his conversations with the DOL investigator led him to believe this suit would not proceed until the DOL investigation was complete.[26] He testified that he has been involved in multiple lawsuits and knows the process of handling a lawsuit.[27] He agreed that when he called Plaintiffs' counsel at their offices in Louisiana and Texas, he was aware they were private attorneys and not employed by the DOL.[28] When asked whether the statement in his motion that he had no knowledge of this suit was true, Butaud first testified that he was unaware of what was stated in the motion.[29] The Magistrate Judge then asked Butaud whether he had read and approved the motion before it was filed, and Butaud responded that he had.[30] Butaud then admitted that the statement that he had no

---

[22] *See* ECF Nos. 26, 29.
[23] ECF No. 30-1 at 1.
[24] ECF No. 35; *see also* ECF No. 40 at 3.
[25] ECF No. 40 at 16–17, 25.
[26] *Id.* at 18–19.
[27] *Id.* at 22.
[28] *Id.* at 23, 25.
[29] *Id.* at 27.
[30] *Id.* at 27–28.

knowledge of this suit was false, and it would have been more accurate to state that he was unaware of the entry of default and unaware of the repercussions of his failure to file an answer until brought to his attention by his counsel.[31]

At the conclusion of the hearing, the Magistrate Judge granted defense counsel's motion to withdraw with regard to Butaud, but denied the motion with regard to the corporate entities.[32] The Magistrate Judge ordered Butaud to retain new counsel no later than January 13, 2020.[33] Thereafter, the Magistrate Judge granted Defendants' motion to set aside default.[34] On January 16, 2020 (three days after the deadline to enroll counsel), the Magistrate Judge granted an oral request by attorney Stephen Dupuis, Jr. for an extension of time to enroll on behalf of all Defendants, giving Mr. Dupuis until January 29, 2020, to file his motion.[35] One day after that deadline, Mr. Dupuis filed a motion to enroll on behalf of Defendants. The motion was granted the following day.[36]

On April 30, 2020, still having received no answer, the Magistrate Judge ordered counsel for Defendants to file responsive pleadings within ten business days.[37] He further cautioned that "Defendants failure to comply shall authorize Plaintiffs to proceed with seeking an entry of default."[38] On May 7, 2020, more than one-and-a-half years after Voyles filed this suit, Defendants filed their Answer.[39] Thereafter, trial was set for July 6, 2021.[40]

---

[31] *Id.* at 28, 31. The Court finds this difficult to believe as Butaud and his business entities have had default judgments entered against them in prior litigation. *See e.g. DEL Corporation v. Triad Emergency Response, LLC and Scott Butaud*, No. 20130679-C (15th JDC June 12, 2013); *Titan of Louisiana, Inc. v. Scott Butaud*, No. 2013-3679 (15th JDC Nov. 25, 2013).
[32] *Id.* at 35.
[33] *Id.*; *see also* ECF No. 39.
[34] ECF No. 43.
[35] ECF No. 50.
[36] ECF Nos. 51, 52.
[37] ECF Nos. 57, 58.
[38] ECF No. 58.
[39] ECF No. 59.
[40] ECF No. 61.

On September 28, 2020, Mr. Dupuis filed a motion to withdraw, again due to Defendants' failure to comply with their financial obligations to counsel, as well as Defendants' failure to communicate with counsel or respond to outstanding requests for documents.[41] The Magistrate Judge set a telephone hearing on October 19, 2020 and ordered Butaud to personally appear.[42] Butaud failed to appear at the hearing.[43] The Magistrate Judge again permitted counsel to withdraw on behalf of Butaud, but denied the motion to the extent defense counsel moved to withdraw representation for the corporate entities.[44] The Magistrate Judge further directed Plaintiffs to file a motion for sanctions.[45]

On October 29, 2020, Plaintiffs moved to reinstate default due to Defendants' persistent failure to obey court orders, their "game of musical chairs" with their attorneys, and their refusal to participate in discovery.[46] Defendants did not respond to the motion. On November 20, 2020, the Magistrate Judge granted the motion and instructed the Clerk of Court to enter default against Defendants.[47] The Magistrate Judge based this sanction on Fed. R. Civ. P. 37(b)(2)(A)(vi) and 16(f)(1), finding Butaud had "failed to cooperate with his counsel and to participate in the discovery process," he had "failed to obey [the Magistrate Judge's] order to appear for a telephone hearing on Mr. Dupuis's motion to withdraw," and that, in spite of court orders, this lawsuit had "been pending for two years without any meaningful participation by Defendants."[48] The Clerk of Court entered default the same day.[49] Defendants did not file any objection or appeal of the

---

[41] ECF Nos. 66, 69.
[42] ECF No. 67.
[43] ECF No. 69.
[44] ECF No. 70.
[45] ECF No. 69 at 2.
[46] ECF No. 71 at 3–4.
[47] ECF No. 73.
[48] *Id.* at 2-3.
[49] ECF No. 74.

Magistrate Judge's Order, they did not seek reconsideration, and they did not move to set aside the default at that time.

A pretrial conference was held on June 23, 2021.[50] At the conference, attorney Steven G. Durio appeared, but stated he was not appearing as counsel for any party. Rather, Mr. Durio advised he had received a letter that day from Butaud and had told Butaud he "would at least facilitate this conference."[51] Mr. Dupuis again inquired as to whether he could withdraw from representation of the corporate defendants; the Court instructed him to submit a written motion with supporting authority. A discussion was held between enrolled counsel and the Court as to whether this matter should be tried on the briefs, as the only outstanding issue in light of the default was the amount of damages owed. When the Court asked Mr. Dupuis for his position on trial on the briefs, Mr. Dupuis stated that because he had not had "any meaningful contact with Mr. Butaud about his intentions regarding the [business] entities," he would prefer that Butaud and Durio "speak to that."[52] The Court permitted Mr. Durio to "help Mr. Butaud articulate his position," while noting that because he was not enrolled as counsel, he could not bind Defendants "as to any of the issues that we're raising here."[53] Mr. Durio then stated that Butaud objected to trial by affidavit, asserting Butaud "believes that there's going to be some credibility issues in connection with the testimony of the plaintiffs."[54] The Court instructed the parties to submit a briefing schedule, such that damages could be determined on the briefs with supporting evidence. However,

---

[50] ECF No. 75.

[51] *See* Transcript of June 23, 2021 conference, p.1; *see also id.* at 1–2 ("I don't know enough about this matter to even consider being counsel of record, and . . . I would like permission to attend this conference, but not participate until if ever I am engaged to represent Mr. Butaud in this matter.")

[52] *Id.* at 5.

[53] *Id.*

[54] *Id.* at 6.

due to the objection of Butaud that there were credibility issues at play, the Court permitted the parties to identify any testimony they believed would require an evidentiary hearing.[55]

One week after the pretrial conference, Durio enrolled on behalf of all Defendants, and Mr. Dupuis was permitted to withdraw from all representation.[56] Thereafter, the parties submitted their briefs on damages. After the Court's initial review of the briefing, the Court instructed Plaintiff to file a motion for default judgment.[57] It was not until the Court issued that Order—over two years after the second entry of default—that Defendants made a request to set aside the entry of default.[58]

## II.
### WHETHER THE ENTRY OF DEFAULT SHOULD BE SET ASIDE

Rule 16(f) authorizes district courts to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)," where a party or its attorney fails to appear at a pretrial conference, is substantially unprepared to participate or does not participate in the conference in good faith, or fails to obey a scheduling or other pretrial order.[59] Rule 37(b)(2)(A), in turn, authorizes courts to impose sanctions, which may include: "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" "striking pleadings in whole or in part;" "rendering a default judgment against the disobedient party;" or "treating as contempt of court the failure to obey any order."[60] Here, the Magistrate Judge sanctioned Defendants by entering default due to Defendants' failure to "participate in the discovery process" and their failure to comply with an "order to appear for a telephone hearing."[61]

---

[55] *Id.*
[56] ECF Nos. 82, 84.
[57] ECF No. 101.
[58] ECF No. 104 at 5. The request to set aside entry of default was not by separate motion, but contained within Defendants' opposition to Plaintiffs' Motion for Default Judgment.
[59] Fed. R. Civ. P. 16(f); *see also Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018).
[60] Fed. R. Civ. P. 37 (b)(2)(A).
[61] ECF No. 73 at 3.

An entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."[62] By defaulting, a defendant admits the plaintiff's "well-pleaded allegations of fact" set forth in the complaint, but he is "not held to admit facts that are not well-pleaded or to admit conclusions of law."[63] The entry of a default, while establishing liability, "is not an admission of damages."[64] A district court may "set aside the entry of default for good cause."[65] In determining whether good cause exists to set aside an entry of default, courts consider factors such as: (1) whether the default was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented.[66] The burden of demonstrating good cause lies with the party challenging the entry of default.[67] All three factors need not be present, and other factors may be considered.[68]

Defendants brief does not offer any reasons why good cause exists to set aside the entry of default. Rather, Defendants merely offer the same reasons they provided for setting aside the first entry of default (*e.g.* Butaud confused this suit with the DOL investigation).[69] Those reasons are neither relevant to the second entry of default, nor sufficient to set it aside.[70] Since the first entry of default was set aside, Defendants have changed counsel two times due to their failure to comply with their financial obligations and their failure to participate in the defense of this suit, they have had to be coaxed into answering the suit, Butaud has failed to comply with court orders

---

[62] *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.")

[63] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[64] *Mickalis Pawn Shop* at 128; *see also Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022).

[65] Fed. R. Civ. P. 55(c).

[66] *Matter of Dierschke*, 975 F.2d at 183–84; *Sindhi*, 905 F.3d at 332.

[67] *Sindhi* at 332.

[68] *Dierschke* at 184.

[69] ECF No. 104 at 6–7.

[70] *See e.g. Vaughn v. Nebraska Furniture Mart, L.L.C.*, 2021 WL 3775313, *2 (5th Cir. Aug. 25, 2021) (collecting cases).

commanding his appearance, he has failed to provide employment records, and his counsel was substantially unprepared to participate in the final pretrial conference due to Butaud's failure to communicate with him. Further, Defendants waited two years after the second entry of default before seeking to set it aside.[71] Under these facts, the Court finds that Defendants' default was not excusable and that it was willful.[72] A finding of willfulness ends the inquiry.[73] Nevertheless, the Court additionally finds that setting aside the default would prejudice Plaintiffs. Plaintiffs have been without earned wages for five years, and Butaud now claims (contrary to his testimony at the hearing on the first motion to set aside default) that the employment records are no longer available.[74] Thus, setting aside the default would only further delay resolution with no foreseeable evidentiary benefit. Finally, for the reasons set forth below, the Court finds Plaintiffs have presented a meritorious claim. Accordingly, the entry of default will not be set aside.

## III.
### WHETHER DEFAULT JUDGMENT IS WARRANTED

Once default has been entered, the Court may, upon motion, enter a default judgment against the defaulting party.[75] Because default judgment is a harsh sanction, district courts should employ this sanction only when there is a "clear record of delay or contumacious conduct."[76] Before entering a default judgment, the Court must find that a lesser sanction would not serve the interests of justice.[77] Courts should additionally consider "aggravating factors," such as whether

---

[71] Whether a defendant acted expeditiously to correct a default is a factor courts may consider in determining whether to set aside an entry of default. *Dierschke* at 184.

[72] *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).

[73] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000); *Sindhi*, 905 F.3d at 332.

[74] *Compare* ECF No. 104 at 15 (employment records have "been lost") *with* ECF No. 40 at 19–20 (employment records are in a storage building in Puerto Rico and Butaud will "personally go get them if we need to get this to trial").

[75] Fed. R. Civ. P. 55(b)(2).

[76] *S.E.C. v. First Houston Capital Resources Fund, Inc.*, 979 F.2d 380, 382 (5th Cir. 1992).

[77] *Id.*; *Elizondo v. Pilgrim's Group, Inc.*, 100 F.3d 952 (5th Cir. 1996).

the client, rather than counsel, is responsible for the violations or delay; actual prejudice to the moving party; and whether the delay or violations were committed intentionally.[78]

    As set forth previously, Defendants have failed to responsibly participate in this litigation. They have failed to comply with Court orders, and they have failed to provide employment records, which are essential to this lawsuit. Further, the Court finds the delays in this matter were committed willfully and in bad faith. Butaud and his companies have been involved in numerous lawsuits.[79] As he previously testified, he knows the process of dealing with a lawsuit.[80] Thus, the Court finds Butaud is more than familiar with his duty to follow court orders. Further, Butaud is solely responsible for the initial nine-month period of inactivity, as the summons adequately informed Butaud of his duty to respond and adequately informed him that this case was filed in the Western District of Louisiana, rather than with the Puerto Rico Department of Labor. Butaud admitted at the evidentiary hearing that he was fully aware of this suit and that it was separate and apart from any DOL investigation, but nevertheless failed to comply with the summons.[81] When Butaud independently contacted Plaintiff's counsel nine days after he was served, Butaud agreed to provide Plaintiff's counsel with payroll data, but then failed to follow through. Butaud is also responsible for subsequent delays. Almost two years after Butaud was served, his second attorney moved to withdraw due to Butaud's failure to satisfy his financial obligations and his failure to

---

[78] *McNeal v. Papasan*, 842 F.2d 787, 790 (5th Cir. 1988); *John v. State of Louisiana*, 828 F.2d 1129, 1131 (5th Cir. 1987); *Williams v. Am. Honda Motor Co., Inc.*, 22-40224, 2023 WL 3739095, *2 (5th Cir. May 31, 2023).

[79] *See e.g. In re Bodin Oil*, 604 B.R. 707 (W.D.La. 2019); *FUFC, LLC v. Excel Contractors, LLC*, CV 18-1095, 2020 WL 1443039 (M.D. La. Mar. 24, 2020); *Bella Int'l, LLC v. Armbruster*, CV 19-1140 (DRD), 2020 WL 813666 (D.P.R. Feb. 18, 2020); *Maderas 3C, Inc. v. Estado Libre Asociado de Puerto Rico*, KLAN202300299, 2023 WL 5046530 (P.R. Cir. June 27, 2023); *Ceres Caribe Inc. v. Superior Disaster Relief LLC*, Case No. 6:20-cv-37 (W.D.La.); *Professional Awning Restoration, Inc. v. B&B Fire and Safety Services, Inc.*, Case No. 2:07-cv-4091 (E.D.La.). This list is by no means exhaustive.

[80] ECF No. 40 at 22.

[81] *Id.* at 16, 22–25, 28.

cooperate in responding to outstanding discovery.[82] For all of these reasons, the Court finds there is a clear record of delay caused by the actions of Butaud.

Additionally, Plaintiffs have suffered actual prejudice because they have been denied any determination of their wage claims for almost five years. Butaud has undermined Plaintiffs' efforts to obtain employment records. Warnings and entries of default have been inadequate in coercing Butaud into compliance with his obligations in this matter. Neither monetary sanctions nor holding Butaud in contempt of court will result in production of employment records that are now purportedly lost. In sum, any sanction other than proceeding to default judgment would serve no purpose other than to delay resolution of this matter to the continued prejudice of Plaintiffs' right to the "just, speedy, and inexpensive determination" of this matter.[83] For these reasons, the Court finds Default Judgment is warranted as to liability.

## IV.
### BASIS FOR JUDGMENT

#### A.    Fair Labor Standards Act

Before addressing the substance of the FLSA claims, the Court must determine whether those employees who have filed statements of consent to join this suit are properly before it. As set forth above, Josh Cartledge, Jonathan Reprogle, Mike Williams, Jackson Wright, Michael McGee, Billy Whitley, and Michael Kucik each filed a "Consent to Join Wage Claim" into the record, indicating they wished to join in this collective action. However, this matter has never been certified to proceed as a collective action. Nevertheless, the Court finds all former employees of Defendants who have filed a statement of consent became parties upon the filing of those forms.[84]

---

[82] *See e.g. Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) (failure to hire counsel can constitute "willful" misconduct).
[83] Fed. R. Civ. P. 1.
[84] *See e.g. Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 91 (1st Cir. 2022); *Farasat v. RP Managing Partners, LLC*, 3:13-CV-270-L, 2014 WL 12588306, at *2 (N.D. Tex. Nov. 13, 2014).

The FLSA permits employees who are "similarly situated" to pursue claims against their employer as a collective.[85] The only other requirement to proceed as a collective under the Act is that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[86] The purpose of certification "is the sending of court-approved written notice to employees," so that they may determine whether or not to join in the suit by filing their written consent.[87] The individuals who filed statements of consent in this suit clearly had notice of its existence, and thus, certification is unnecessary. More importantly, the Complaint and affidavits submitted by those employees provide sufficient facts to establish that the plaintiffs are similarly situated, as they all allege they were subject to the same illegal pay practices by Defendants.[88] Accordingly, the Court finds all persons who filed a written consent to join in this suit became parties upon the filing of those forms.

---

[85] 29 U.S.C. § 216(b); *Swales v. KLMM Transport Services, L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).
[86] 29 U.S.C. § 216(b).
[87] *Swales* at 440 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).
[88] In *Farasat*, the named plaintiff did not formally seek conditional certification of a collective action prior to seeking a default judgment. Nevertheless, the district court concluded that the two persons who had previously filed notices of consent met the requirements for a collection action under the FLSA, because they were similarly situated, and they had consented in writing to join the suit. *Farasat*, 2014 WL 12588306, at *1-2. In *Montes v. Janitorial Partners, Inc.*, the D.C. Circuit rejected defendants' argument that a default judgment in a suit filed as an FLSA collective action (but never formally certified as a collective action) was void, due to lack of notice, with regard to two "similarly situated" employees who had not filed statements of consent into the record. The court found:

> [T]he complaint itself gave them notice, as it brought a collective action under the FLSA, asserted that two persons similarly situated to [the named plaintiff] qualified as Collective Action Members and requested "unpaid minimum wages and overtime against Defendants in favor of Plaintiff and *all Collective Action Members.*" Assuming for this argument that [defendants] were in fact properly served, they were therefore on notice that any default judgment could reach employees other than [the named plaintiff].

*Montes*, 859 F.3d 1079, 1082 n.3 (internal citation omitted).

As to the substance of the FLSA, its principal purpose is "to protect all covered workers from substandard wages and oppressive working hours."[89] To that end, the Act establishes minimum wage and overtime compensation requirements for covered employers.[90] An employer who violates these provisions can be civilly liable for backpay, liquidated damages and attorney fees.[91] The statute defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."[92] As recognized by the Supreme Court, this definition is "expansive" and includes individuals with "managerial responsibilities" and "substantial control of the terms and conditions of the work of [its] employees."[93] Individuals deemed employers under the FLSA are jointly and severally liable with the corporation for unpaid wages.[94]

With regard to overtime, the Act provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[95] An employee seeking compensation for unpaid overtime wages must demonstrate by a preponderance of the evidence: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the

---

[89] *Aldridge v. Mississippi Department of Corrections*, 990 F.3d 868, 871 (5th Cir. 2021) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

[90] 29 U.S.C. §§ 206, 207.

[91] *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014).

[92] 29 U.S.C. § 203(d).

[93] *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *see also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984).

[94] *Donovan* at 972 ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *Hernandez v. Larry Miller Roofing, Inc.*, 628 Fed.Appx. 281, 285 (5th Cir. 2016).

[95] 29 U.S.C.A. § 207(a)(1).

coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due."[96]

"[A] plaintiff who brings a claim for unpaid overtime bears 'the burden of proving that he performed work for which he was not properly compensated.'"[97] "This burden is 'easily discharge[d]' where an employer keeps accurate records of an employee's hours, as the FLSA requires."[98] If, however, an employer fails to keep records or its records are inaccurate or inadequate, "a plaintiff need only come forward with evidence that shows 'that he has in fact performed work for which he was improperly compensated' and further shows 'the amount and extent' of unpaid overtime worked 'as a matter of just and reasonable inference.'"[99] Once the plaintiff makes a prima facie showing, the burden shifts to the employer to come forward with evidence rebutting the plaintiff's claims.[100] The employer discharges its burden by presenting either "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."[101] If the employer fails to meet its burden, "the court may then award damages to the employee, even though the result be only approximate."[102] The latter, "lenient" standard is "rooted in the view that an employer shouldn't benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable."[103]

---

[96] *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).
[97] *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362 (5th Cir. 2023) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).
[98] *Id.* (quoting *Mt. Clemens* at 687).
[99] *Id.* (quoting *Mt. Clemens* at 687) (Under this "relaxed standard," the plaintiff is not required to prove the precise amount of uncompensated work, but he must present more than unsubstantiated assertions.)
[100] *Id.*
[101] *Id.* (quoting *Mt. Clemens* at 687–88).
[102] *Id.* (quoting *Mt. Clemens* at 688).
[103] *United States Dep't of Labor v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 440 (5th Cir. 2021).

Here, Plaintiffs satisfy the first element because they allege an employer-employee relationship existed during the relevant period of time.[104] The second element is satisfied because Plaintiffs were "employed in an enterprise engaged in commerce or in the production of goods for commerce."[105] The third element is satisfied, because the parties agree Plaintiffs worked twelve hours per day, seven days per week, and were paid a day rate which did not include overtime pay.[106] Plaintiffs satisfy the fourth element through submission of their affidavits, as well as the limited employment records Defendants have produced. Accordingly, the Court concludes Plaintiffs' Complaint provides an adequate basis for judgment.

## B.     Breach of Contract

In order to state a valid claim for breach of contract under Louisiana law, a plaintiff must show: (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform the obligation—*i.e.*, the breach, and (3) the failure to perform resulted in damages to the obligee.[107] Here, the Complaint alleges Defendants entered into contracts with the Plaintiffs, whereby Defendants agreed to pay Plaintiffs a day rate for disaster relief work; Defendants failed to pay Plaintiffs at all for certain workweeks; and Plaintiffs have suffered damages (in the form of unpaid wages) due to Defendants' failure to perform.[108] Accordingly, the Court concludes Plaintiffs' Complaint provides an adequate basis for judgment.

The Court now turns to the issue of damages.

---

[104] ECF No. 1 at ¶¶ 1–2, 13–14, 16, 18, 20, 22, 24, 32, 34; ECF No. 59 at 2, ¶ 9; *id.* at 5, ¶ 1; *see also* 29 U.S.C. § 203(d), (g), (r); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).
[105] 29 U.S.C. § 207(a)(1); *see also* 29 U.S.C. § 203(s)(1)(A); ECF No. 1 at ¶¶ 13–14, 20–21; ECF No. 59 at 2, ¶ 9; *id.* at 3, ¶ 13.
[106] ECF No. 89; *id.* at Exs. 1–7; ECF No. 88 at 5.
[107] *Jones v. Administrators of Tulane Educ. Fund*, 51 F.4th 101, 113 (5th Cir. 2022); *see also Sanga v. Perdomo*, 14-609, p. 7 (La.App. 5 Cir. 12/30/14); 167 So.3d 818, 822; *Meyer & Associates, Inc. v. Coushatta Tribe of Louisiana*, 2014-1109, p. 37 (La.App. 3 Cir. 1/27/16); 185 So.3d 222, 246.
[108] ECF No. 1 at 3–4, 8.

# III.
## FLSA DAMAGES

### A.    Overtime Wages

Again, the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[109] The implementing regulations provide that where an employee is paid a day rate, the regular rate of pay "is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked. [The employee] is then entitled to *extra* half-time pay at this rate for all hours worked in excess of 40 in the workweek."[110]

Based upon their admittedly incomplete records, Defendants contend that none of the Plaintiffs are entitled to overtime pay. According to Defendants, the employment records they retained "show [Plaintiffs] were actually paid, on a cumulative basis, more than the maximum overtime due."[111] Alternatively, if the Court examines wages paid by the workweek, Defendants contend that a few employees are owed a "little . . . additional payment."[112] However, Defendants method of calculation ignores both the statutory provisions of the FLSA and the implementing regulations. While Defendants correctly calculate the employees' regular rate and half-time premium, they err in their calculation of overtime. Defendants apply the employees' regular rate to the first 40 hours in the workweek, but then apply only the half-time premium to the employees' overtime hours accumulated in each workweek.[113] In other words, Defendants contend its

---

[109] 29 U.S.C. § 207(a)(1).
[110] 29 C.F.R. § 778.112 (emphasis added).
[111] ECF No. 88 at 6; *see also id.* at 4–5.
[112] *Id.* at 5, 6.
[113] *See e.g.* ECF No. 92 at 2; ECF No. 88 at 5.

employees are owed *only* half of their regular rate for hours worked in excess of 40 in each workweek, rather than their regular rate *plus* their extra half-time pay. Because the majority of plaintiffs were paid more each week than the numbers Defendants arrive at using their faulty calculations, they contend Plaintiffs have been paid either more than required under the FLSA, or are owed only nominal sums. As Defendants' method of calculation does not comport with the FLSA or the implementing regulation, their calculations are of no benefit to the Court.

### B.    Liquidated Damages

An employer who violates the overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."[114] This language is mandatory, and the only exception is found in the Portal-to-Portal Act, which provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.[115]

"A district court may not exercise its discretionary authority to reduce or eliminate a liquidated damage award unless the employer sustains the 'substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith *and* predicated upon . . . reasonable grounds.'"[116]

---

[114] 29 U.S.C. § 216(b).
[115] 29 U.S.C.A. § 260.
[116] *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)).

Here, Defendants' only argument against the imposition of liquidated damages is that "[b]ecause the evidence and plaintiffs' agreement shows the plan did not violate the FLSA, it certainly was not a willful violation."[117] But as set forth above, Defendants did not have reasonable grounds for believing their wage practices were not violative of the FLSA. Indeed, Defendants argue that they were only required to pay Plaintiffs half of their regular rate for overtime hours worked, which clearly violates the FLSA.[118] Because Plaintiffs have sufficiently shown their entitlement to unpaid half-time wages, and Defendants have not sustained their burden of showing that their failure to obey the FLSA was in good faith, the Court will award Plaintiffs liquidated damages.

## C.   Application

The Court finds damages for the following Plaintiffs can be determined with a mathematical calculation by reference to the pleadings and supplemental documents, and therefore a hearing is unnecessary.[119]

### 1.   William Voyles

There is no dispute that, Voyles worked for Defendants from June 9, 2018, through September 16, 2018, seven days per week, twelve hours per day, at a day rate of $275 per day.[120] Therefore, Voyles regular rate of pay was $22.92 per hour.[121] Therefore, for each full workweek

---

[117] ECF No. 92 at 2–3; *see also* ECF No. 104 at 14.

[118] Defendants also contend the Court should not impose liquidated damages because, "[h]ad [employment] records not been lost it might be that no overtime due was ever unpaid," and that their failure to produce employment records was "due to a physical inability." ECF No. 104 at 15. However, as previously noted, Butaud testified at the evidentiary hearing before the Magistrate Judge that the employment records are sitting in a storage building in Puerto Rico, and that he could and would "personally go get them if we need to get this to trial." ECF No. 40 at 19–20. The Court finds Butaud's failure to comply with his obligations under the FLSA to maintain employment records does not constitute good faith or reasonable grounds to decline to award liquidated damages.

[119] *See* Fed. R. Civ. P. 55(b)(2); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

[120] ECF No. 88 at 4-5; ECF No. 89 at 6; ECF No. 89-8, ECF No. 88-1 at 1, ¶ 2.

[121] *See* 29 C.F.R. § 778.112.

Voyles worked, he is entitled to an additional $504.24 in unpaid half-time wages.[122] As Voyles worked 14 full workweeks for which he was not paid overtime, he is entitled to $7,059.36 in unpaid overtime wages. He is additionally entitled to an equal amount in liquidated damages, for a total of $14,118.72. Voyles asserts he was not paid at all for his final 42 days of employment. Voyles is therefore owed an additional $11,550.00 in contractual damages. Thus, Voyles will be awarded a total of **$25,668.72** in unpaid wages.

### 2.    Jonathan Reprogle

Reprogle attests that he worked for Defendants from June 9, 2018 to December 1, 2018.[123] Defendants contend that Reprogle was employed from June 9, 2018 to September 16, 2018,[124] and counsel for Plaintiffs appears to have limited the recovery they seek to the dates alleged by Defendants.[125] Reprogle attests that he was employed as a roofer, he was paid a day rate of $250.00, and he received no overtime wages.[126] Therefore, Reprogle's regular rate of pay was $20.83, and thus, for each full workweek, Reprogle should have received an additional $458.26 in overtime compensation.[127] Reprogle worked 14 full workweeks between June 10, 2018, and September 16, 2018, and he is therefore owed an additional $6,415.64 in unpaid overtime. Reprogle is entitled to liquidated damages in an equal amount, for a total of $12,831.28.

Counsel for Reprogle asserts he is owed $10,500 for six weeks of work for which he was not paid at all. According to Reprogle's affidavit, he was not paid "for the last three pay periods [he] worked for [Defendants]."[128] In light of Reprogle's affidavit, his last three pay periods would

---

[122] $22.92 x 0.5 x 44 hrs = $504.24. *See also* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp (last visited Sep. 26, 2023).
[123] ECF No. 89-5.
[124] ECF No. 88 at 4; *see also* ECF No. 89 at 7, ECF No. 95 at 4 n.2.
[125] ECF No. 89 at 7; ECF No. 95 at 4 n.1.
[126] ECF No. 89-5.
[127] *See* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp.
[128] ECF No. 89-5.

have spanned from October 21, 2018 to November 25, 2018. Thus, counsel has not shown Reprogle's entitlement to damages for breach of contract. Accordingly, Reprogle will be awarded a total of **$12,831.28** in unpaid wages.

### 3. Mike Williams

Williams has submitted an affidavit attesting that he worked for Superior from May 31, 2018, to September 28, 2018.[129] All parties agree Williams' day rate was $300.00, and that he worked 12 hours per day, 7 days per week.[130] Thus, Williams regular rate of pay was $25.00 per hour, and his overtime premium was $12.50.[131] For each full workweek Williams worked, he is owed an additional $550.00 in unpaid overtime. Williams worked 16 full workweeks for which he is owed $8,800.00 in unpaid overtime, and his final week of employment consisted of six days, for which he is owed $400.00 in unpaid overtime. Therefore, Williams is owed $9,200.00 in unpaid overtime wages, and an equal amount in liquidated damages, for a total of $18,400.00. Williams additionally asserts he was not paid at all for his final fourteen days of employment. Therefore, Williams is owed an additional $4,200.00 in contractual damages.[132] Accordingly, Williams will be awarded a total of **$22,600.00** in unpaid wages.

### 4. Jackson Wright

The parties agree Wright was employed by Defendants from June 24, 2018, to September 16, 2018, his day rate was $275, and he worked 7 days per week, 12 hours per day.[133] Therefore, Wright's regular rate was $22.92 per hour, and for each full workweek he is owed an additional

---

[129] ECF No. 89-6; *see also* ECF No. 89 at 8. Defendants contend Williams was only employed from June 24, 2018 to July 7, 2018, but as Defendants acknowledge, this contention is based upon incomplete records. ECF No. 88 at 3–4.
[130] ECF No. 88 at 5; ECF No. 89 at 8.
[131] *See* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp.
[132] ECF No. 89-6.
[133] ECF No. 88 at 4, 5; ECF No. 89 at 8.

$504.24 in unpaid overtime wages.[134] As Wright worked 12 full workweeks, he is owed $6,050.88 in unpaid overtime wages and an equal amount in liquidated damages for a total of $12,101.76. Wright additionally asserts he was not paid at all for his final 42 days of employment and is therefore owed an additional $11,500.00 in contractual damages. Accordingly, Wright will be awarded a total of **$24,000.88** in unpaid wages.

### 5.    Michael McGee

McGee attests that he worked for Defendants from June 1 to September 1, 2018.[135] All parties agree McGee's day rate was $275, and that he worked 12 hours per day, 7 days per week.[136] All parties agree McGee's regular rate of pay was $22.92.[137] Therefore, for each full week worked, McGee was owed an additional $504.24 in overtime.[138] McGee worked 13 full work weeks and is therefore owed a total of $6,555.12 in unpaid overtime wages and an equal amount in liquidated damages for a total of $13,110.24. McGee additionally asserts he was not paid at all for his final eleven days of employment and is therefore owed an additional $3,025.00 in contractual damages.[139] Accordingly, McGee will be awarded a total of **$16,135.24** in unpaid wages.

### 6.    Billy Whitley

All parties agree Whitley was employed by Defendants from June 24, 2018 to July 7, 2018, his day rate was $275, and he worked 7 days per week, 12 hours per day.[140] All parties agree Whitley's regular rate of pay was $22.92.[141] Therefore, Whitley is owed an additional $1,008.48

---

[134] *See* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp.
[135] ECF No. 89-2. Defendants contend McGee was only employed from June 24, 2018 to July 7, 2018, but as Defendants acknowledge, they failed to maintain employment records as required by the FLSA, and their records are incomplete. ECF No. 88 at 3–4.
[136] ECF No. 88 at 5; ECF No. 89 at 7; *see also* ECF No. 88-1 at 91.
[137] ECF No. 89-9; ECF No. 88 at 5.
[138] *See* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp.
[139] ECF No. 89-2.
[140] ECF No. 88 at 4; ECF No. 88-1 at 93; ECF No. 89 at 8.
[141] ECF No. 88-1 at 93; ECF No. 89-17.

in overtime and an equal amount in liquidated damages.[142] Accordingly, Whitley will be awarded a total of **$2,016.96** in unpaid wages.

***

The Court finds an evidentiary hearing is necessary before the Court can determine the amount of unpaid wages for the following Plaintiffs.

### 7.   Josh Cartledge

Cartledge attests that he worked for Defendants from August 5, 2018, to October 11, 2018, at a day rate of $275.[143] In their brief, Defendants deny Cartledge worked for them, because they have no records for Cartledge.[144] However, Defendants failed to maintain employment records as required by the FLSA, and the limited records Defendants do have do not cover the time period Cartledge attests he was employed.[145] More importantly, Defendants admitted Cartledge was their employee in their Answer and in the Rule 26(f) Report.[146] Further, Cartledge has submitted photos of two checks made out to him from Superior Disaster Relief LLC that appear to be paychecks, as they correspond with his wages.[147] For these reasons, the Court finds Cartledge was employed by Defendants.

Nevertheless, there are several fact issues that must be determined before the Court can calculate any unpaid wages due. First, Cartledge attests that his employment began on August 5, 2018. However, Plaintiffs' brief and damages calculation argues his employment began on August 27, 2018.[148] Additionally, Butaud has submitted an affidavit implying that all of Defendants' work

---

[142] *See* https://webapps.dol.gov/elaws/whd/flsa/otcalc/otreport.asp.
[143] ECF No. 89-3.
[144] ECF No. 88 at 6; *see also id.* at 4.
[145] ECF No. 88 at 2–3 (The limited records in Defendants' possession span from March 11, 2018 to July 22, 2018); *see also* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1.
[146] ECF No. 59 at 5, ¶ 1; ECF No. 64 at 2.
[147] ECF No. 89-13, ECF No. 89-14.
[148] *Compare* ECF No. 89-3 *with* ECF No. 89 at 6; ECF No. 89-10.

was completed "around October 5, 2018," and therefore no employees would have worked past that date.[149] The Court finds an evidentiary hearing is necessary to determine the dates of Cartledge's employment.

### 8.    Michael Kucik

Kucik attests that he worked as a Project and Operations Manager for Defendants from April 1, 2018 to December 3, 2018, at a day rate of $350.00.[150] He further attests he was paid no overtime, and that he was not paid at all for his final 56 days of employment (from October 7, 2018 to December 8, 2018).[151] Kucik attests that his employment ended December 3, 2018 but, as previously noted, Butaud has submitted an affidavit indicating all employment ended on October 5, 2018. The Court finds an evidentiary hearing is required to determine Kucik's last day of employment before damages can be calculated.

## IV.
### CONCLUSION

For the reasons set forth in this Ruling, Plaintiffs' Motion for Default Judgment is GRANTED. An evidentiary hearing will be set by separate order to determine the appropriate amount of damages for Plaintiffs Josh Cartledge and Michael Kucik. Within fourteen days of that hearing, counsel for Plaintiffs are to submit a motion for attorneys' fees and costs.[152]

THUS DONE in Chambers on this 27th day of September, 2023.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[149] ECF No. 92-1 at 1–2.
[150] ECF No. 89-7.
[151] *Id.*; *see also* ECF No. 89-16.
[152] An employer who violates the FLSA is required to pay attorneys' fees and costs in addition to any judgment awarded to the plaintiff. 29 U.S.C. 216(b). Having established through default that Defendants are liable under the FLSA, Plaintiffs have shown they are entitled to attorneys' fees and costs.